# *STANG v. UNION FOR REFORM JUDAISM*

# MEM. OPP. TO 12(b)(6) MOTION TO DISMISS

Highlighted, Restored Text – *Stevens v. Tillman*

# EXHIBIT A

principal making such **racist** statements.

> The teachers of the school have brought to most of our attention that it has been run as a dictatorship, and we do not need a dictatorship in our children's school.... They're being degraded and put down, and it's all because of a dictatorship with Miss Stevens.
>
> We have exposed the Mollison pollution.... Since 1975, the quality of education has gone down at Mollison School and Miss Stevens has sat and watched it. She did nothing about it.... Miss Stevens is insensitive to the children, the parents and the community. We can no longer allow her to destroy our children's minds.

The common law in Illinois follows the **Restatement (Second) of Torts** § 566 (1977), which provides:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

When a statement in the form of an opinion discloses the defamatory facts (or refers to facts in the public record), it is not actionable apart from those facts. See *Horowitz v. Baker,* 168 Ill.App.3d 603, 119 Ill.Dec. 711, 523 N.E.2d 179 (3d Dist.1988); *Stewart v. Chicago Title Insurance Co.,* 151 Ill.App.3d 888, 104 Ill.Dec. 865, 503 N.E.2d 580 (4th Dist.1987), both building on dicta in *Owen v. Carr,* 113 Ill.2d 273, 277–81, 100 Ill.Dec. 783, 787–88, 497 N.E.2d 1145, 1148–49 (1986). (In *Costello v. Capital Cities Communications, Inc.,* 153 Ill.App.3d 956, 966–67, 106 Ill.Dec. 154, 160–62, 505 N.E.2d 701, 707–09 (5th Dist.1987), a divided panel concluded that *Stewart* had misinterpreted *401 *Owen; Horowitz* followed *Stewart* without further discussion, and we are convinced that these cases are on solid ground.) *Horowitz* is particularly instructive, because the speech in question there made a number of derogatory statements ("sleazy", "cheap", "pull a fast one", "secret", and "rip-off") about the plaintiff's purchase of bricks from a city. These statements readily could have been read to imply the speaker's knowledge of bribery, extortion, or some other crime. The court nonetheless held them not actionable under state law, because a newspaper earlier had published the facts on which these characterizations had been based.

Tillman and her confederates disclosed the principal bases of their condemnations. The students were doing poorly at math; Stevens employed a method of testing that her witnesses at trial conceded was improper; the students were forced to walk home and back again at lunch; Stevens was a strict disciplinarian; Stevens thought poorly of the pupils ("welfare children") and their prospects (they needed "psychologicals"); and on and on. Most of these factual averments were submitted to the jury, which found several false but not intentionally so; others were found true (or were not pressed by Stevens). All that remained was the characterization, which under Illinois law is not actionable apart from the underlying statements of fact.

One subject was removed from the jury's purview without any (evident) submission of underlying fact: the repeated claim that Stevens is a "**racist**". This was offered as a body blow, an attack on fitness and integrity. Stevens argues that it is **libel** *per se* under Illinois law. Tillman also declared that Stevens "made numbers of very **racist** statements, so many that I would use all of my time to explain to you some of the statements that were made." Stevens either did or did not make repugnant statements; Tillman said that she had, yet offered no examples. One is entitled to wonder how such an assertion can be "opinion." Perhaps Tillman meant only to characterize statements of the "welfare-mother" variety; this interpretation would be an opinion rather than a declaration of fact. The words also might have implied something like: "Stevens made to me statements similar to those that Gov. Ross Barnett made while standing in the schoolhouse door, and she holds the same views about black people that Barnett did." That would be a statement of fact, and could be quite wrong.

[***Start of Block Quote in Defendants' Mem. 5***]
Curiously, Stevens does not contend that the jury should have been allowed to consider whether Tillman's oratory implied to listeners that Stevens had made the kind of statements that all ears find repellant. Stevens contends that the epithet "**racist**" is itself actionable because it marks her as unfit to be principal of a public school and because Tillman used the term (in conjunction with the claim that she had conducted an "investigation") to imply possession of derogatory information. The results of the "investigation", such as it was, were spread before the jury. We do not think a court of Illinois would agree that the term itself is actionable, so again we do not consider any constitutional argument.

Illinois has competing doctrines: first, that statements impugning one's professional competence are actionable without further proof of injury; second, that "mere name-calling" is not actionable. Compare *Costello v. Capital Cities Media, Inc.,* 111 Ill.App.3d 1009, 67

Ill.Dec. 721, 445 N.E.2d 13 (5th Dist.1982) ("lying leadership" is actionable per se), affirmed in relevant part after later appeal, 153 Ill.App.3d 956, 106 Ill.Dec. 154, 505 N.E.2d 701, 708 (1987); *Erickson v. Aetna Life & Casualty Co.,* 127 Ill.App.3d 753, 83 Ill.Dec. 72, 469 N.E.2d 679 (2d Dist.1984) (calling chiropractor's treatment "unreasonable & unnecessary" is actionable per se); with, e.g., *Horowitz* ("sleazy" and "rip-off" are name-calling); *Valentine v. North American Co. for Life & Health Insurance.,* 60 Ill.2d 168, 328 N.E.2d 265 (1974) ("lousy agent" is name-calling); and *Skolnick v. Nudelman,* 95 Ill.App.2d 293, 305, 237 N.E.2d 804, 810 (1st Dist.1968) ("nut", "mishuginer", and "screwball" are name-calling). We shall not pretend to be able to harmonize these cases. "Liar" and "unnecessary medical treatment" imply a greater degree of certainty **\*402** than does "lousy agent" or "rip-off" and therefore, we suppose, imply access to additional supporting facts, but there is hardly a bright line. We do not think it necessary to wrestle with the subject in light of *Owen v. Carr,* the most recent word from the Supreme Court of Illinois, which held that "[l]anguage to be considered defamatory must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." 497 N.E.2d at 1147, 100 Ill.Dec. at 785. *Owen* ruled that, as a matter of law, an accusation that an attorney filed a complaint "deliberately to intimidate" the defendants was not actionable, although the comment implied professional wrongdoing.

Accusations of "**racism**" no longer are "obviously and naturally harmful". The word has been watered down by overuse, becoming common coin in political discourse. Tillman called Stevens a **racist**; Stevens issued a press release calling Tillman a "**racist**" and her supporters "bigots". Formerly a "**racist**" was a believer in the superiority of one's own race, often a supporter of slavery or segregation, or a fomenter of hatred among the races. Stevens, the principal of a largely-black school in a large city, obviously does not believe that blacks should be enslaved or that Jim Crow should come to Illinois; no one would have inferred these things from the accusation. Politicians sometimes use the term much more loosely, as referring to anyone (not of the speaker's race) who opposes the speaker's political goals—on the "rationale" that the speaker espouses only what is good for the jurisdiction (or the audience), and since one's opponents have no cause to oppose what is beneficial, their opposition must be based on race. The term used this way means only: "He is neither for me nor of our race; and I invite you to vote your race." When Stevens called Tillman a "**racist**", Stevens was accusing Tillman of playing racial politics in this way rather than of believing in segregation or racial superiority. That may be an unfortunate brand of politics, but it also drains the term of its former, decidedly opprobrious, meaning. The term has acquired intermediate meanings too. The speaker may use "she is a **racist**" to mean "she is condescending to me, which must be because of my race because there is no other reason to condescend"—a reaction that attaches racial connotations to what may be an inflated opinion of one's self—or to mean "she thinks all black mothers are on welfare, which is stereotypical". Meanings of this sort fit comfortably within the immunity for name-calling.

Language is subject to levelling forces. When a word acquires a strong meaning it becomes useful in rhetoric. A single word conveys a powerful image. When plantation owners held blacks in chattel slavery, when 100 years later governors declared "segregation now, segregation forever", everyone knew what a "**racist**" was. The strength of the image invites use. To obtain emotional impact, orators employed the term without the strong justification, shading its meaning just a little. So long as any part of the old meaning lingers, there is a tendency to invoke the word for its impact rather than to convey a precise meaning. We may regret that the language is losing the meaning of a word, especially when there is no ready substitute. But we serve in a court of law rather than of language and cannot insist that speakers cling to older meanings. In daily life "**racist**" is hurled about so indiscriminately that it is no more than a verbal slap in the face; the target can slap back (as Stevens did). It is not actionable unless it implies the existence of undisclosed, defamatory facts, and Stevens has not relied on any such implication.

[*End of Block Quote on Defendants' Mem. 6*]

III
[4] [5] The district court instructed the jury that it could return a verdict for Stevens only if it found by clear and convincing evidence that any falsehood had been uttered with knowledge of the lie or recklessness toward the truth. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–86, 84 S.Ct. 710, 725–29, 11 L.Ed.2d 686 (1964). It did so on two grounds: that **\*403** Stevens is a public official, and that the speakers were exercising their right to petition the government for redress of grievances.

Stevens relies on *Hutchinson v. Proxmire,* 443 U.S. 111, 133–36, 99 S.Ct. 2675, 2687–89, 61 L.Ed.2d 411 (1979), for the proposition that public criticism does not transmute the target into a "public figure". Granted. But Stevens was a public *official* —just like the commissioner who supervised the police department in *New York Times*