IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK STANG and STUART COHN, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:20-cv-00757 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| UNION FOR REFORM JUDAISM, | ) | Magistrate Judge M. David Weisman |
| JONAH DOV PESNER, and | ) | |
| RICHARD "RICK" JACOBS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(6) MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants UNION FOR REFORM JUDAISM, JONAH DEV PESNER, and

RICHARD "RICK" JACOBS, by their attorney Mitchell H. Frazen of LITCHFIELD CAVO

LLP, in further support of their Motion to Dismiss Plaintiffs' Complaint, observe that

Plaintiffs' Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss

the Complaint ("Memo. Opp."), is an unfortunate example of the old adage sometimes

known as "The Lawyers' Rule": "When the facts are on your side, pound the facts.

When the law is on your side, pound the law. When neither is on your side, pound the

table."

Plaintiffs' version of pounding the table in this action is to make *ad hominem*[1]

attacks on Defendants' counsel, substituting name-calling[2] and accusations of unethical

---

[1] *Argumentum ad hominem* is a fallacious argumentative strategy that seeks to avoid genuine discussion of the legal and factual weakness of one's claims by instead attacking the character and ethics of the person making the argument against one's position.

[2] Plaintiffs' colorful name-calling, including labeling Defendants' counsel's arguments as "vaguely presented," "spartan," "tepid," "roundabout," "not cite-checked," "woefully inadequate," exhibiting "poor word choice" and employing "chainsaw-like" editing, can perhaps be attributed to his background as a

conduct[3] for factual and legal arguments that their Complaint states a cause of action against Defendants for "group libel," based on an opinion editorial directed at more than 3.7 million "white Jews" in America that does not name the Plaintiffs, describe them or refer to them individually.

Plaintiffs' Memorandum in Opposition, like their Complaint allegations,[4] studiously avoids quoting more than snippets of what Rabbi Jonah Pesner of the Union for Reform Judaism wrote and submitted to the *Chicago Tribune* for publication as an opinion editorial on its "Perspective" page.

It is for that reason worth restating the following language of Rabbi Pesner's op-ed, since Plaintiffs admit that actionable defamation is limited to false statements of fact, and whether a statement is factual or a constitutionally protected opinion depends upon

humor editor of his college newspaper and his more recent work as a stand-up comedian in Chicago comedy venues.

[3] Plaintiffs' repeated accusations that Defendants' counsel has violated his duty of candor to this Court under Rule 3.3(a)(2) of the Illinois Rules of Professional Conduct, as adopted by Local Rule 83.50, by "deliberately ignor[ing]" supposedly contrary legal authority, is something else again. (Memo. Opp. at 1, 2, fn.1, 3, 5, fn.2, 6, fn.3, 13, 14, fn.5) They are, however, an example of the "false dilemma" or "false choice" argumentative fallacy, in which it is proposed that undersigned counsel "either overlooked" and "neglected to read" the uncited cases, or that counsel "deliberately failed to cite" legal authority known to be directly adverse to the positions of Defendants on their motion to dismiss. In fact, there is a third choice; namely, that undersigned counsel considered the non-cited cases and concluded they were not "directly adverse" because they are not "on point;" and that they are not authoritative, that is, they are not "good law" on the issues in this case. Judge Tharp of this District Court has interpreted the rule to mean that counsel has "an ethical obligation to cite <u>controlling authority</u> that is<u> directly on point</u>, even (and especially) when that authority is adverse to their client's position and opposing counsel fails to cite it." Taylor v. Client Services, Inc., No. 17-CV-05704, 2018 WL 4355819, 3 (N.D. Ill. Sept. 12, 2018) (emphasis added). As substantively shown in this Reply, none of the uncited cases is "controlling authority" that is "directly on point" to the issues raised by Defendants in their motion to dismiss Plaintiffs' Complaint.

[4] "This action arises out of Defendant Pesner's libel of American Jews, including by imputation the Plaintiffs in this action, as (i) 'racists' who are purportedly bigoted against African-Americans, in Plaintiffs' 'hearts,' 'communities,' 'congregations,' and 'synagogues,' and (ii) knowing and willing recipients of numerous benefits of 'white privilege'… whereby 'white Jews have reaped the rewards of racism,…'"(Complaint, par. 1).

its context, and whether, as Plaintiffs argue, these statements "insinuate the existence of additional, undisclosed facts" (Memo. Opp. at 8):

> "Americans in general and faith groups in particular increasingly find ourselves reckoning with our nation's bigoted history and struggling with how to dismantle the racist systems and structures that persist to this day."

> "African slaves and their descendants had their freedom, self-determination, bodies, communities, ability to inherit and pass down wealth to their loved ones, possessions and, most important, their humanity, systematically stolen from them; reparations are an attempt to offer a restoration of their rightful blessings."

> "We find ourselves in an era of reckoning, of cultural shifts, the rejection of a racist history and of ongoing racist systems and structures. Confederate statues are coming down, grandchildren are educating their elders about white privilege and universities are moving to atone for their roles in perpetuating our democracy's original sins of slavery and colonization."

> "And without diminishing their sacrifices or the challenges they faced, we can now understand that they and many of us also benefited from, and continue to benefit from, the same white privilege that allows for the continued discrimination against black Americans. From how we gained entry into this country to the places we were allowed to live and work, to access to education and financial capital, white Jews have reaped the rewards of racism. What do we as white Jews do when we realize that so many of us have benefited from whiteness – even as we still have faced discrimination of our own?"

> "Knowledge must then transform into action against the racism still lingering in our congregations and communities, and a clearer sense of what true reparations might look like."

> "The URJ's resolution is about confronting racism in our county, our synagogues and hearts."

These statements are on their face and in context merely opinions, which do not suggest the existence of any additional facts and do not amount to actionable libels of any group, much less defamation of the unnamed individual Plaintiffs Mark Stang and Stuart Cohn.

As this Court itself recognized in *Black v. Wrigley*, 2017 WL 8186996 (N.D. Ill. No. 1:17-cv-00101, Dec. 8, 2017), where the allegations of Plaintiffs' complaint conflict

3

with the statements in the allegedly defamatory writing, the contents of the writing control. *Id.* at 6; *citing Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls."). This Court may therefore consider whether the statements contained in Rabbi Pesner's op-ed itself, as opposed to Plaintiffs' characterizations of those statements, are nonactionable opinions. *See Id.* ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

Plaintiffs Do Not Address or Refute Critical Points Requiring Dismissal of Their Complaint

Amidst their Memorandum in Opposition's fifteen pages of *ad hominem* table-pounding, travelogues of Ireland, Celtic history lessons, and a "'parallel-universe' type analogy," Plaintiffs <u>do</u> <u>not</u> address or dispute in any way:

- That the standard of decision on this Rule 12(b)(6) motion does not require this Court to accept as true unsupported conclusions of law, conclusory allegations of facts, or to ignore facts alleged in the Complaint that undermine Plaintiffs' claims;

- That the controlling Illinois law of defamation requires for a statement to be actionable as libel that it be "of and concerning" the plaintiff bringing the action. The statements allegedly directed at "white American Jews" are plainly not assertions of facts "identifiably about the plaintiff[s]" and are therefore non-actionable. *Shivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 765, 776 N.E.2d 693, 701 (1st Dist. 2002). None of the several cases cited for that proposition at pages 6 and 7 of Defendants' Memorandum are even discussed by Plaintiffs, who simply

4

label them as "wholly distinguishable," apparently based on a mistaken belief that it is Plaintiffs' <u>standing</u>, and not their identification as the subjects of the allegedly defamatory statements, that is lacking;

- That under Illinois law, individual plaintiffs cannot sustain defamation causes of action, even in cases where a group is actually libeled, unless the group is "sufficiently small and the words may reasonably be understood to have personal reference and application to any member of the group." *Missner v. Clifford*, 393 Ill.App.3d 751, 768, 914 N.E.2d 540, 556 (1st Dist. 2009), citing Restatement (Second) of Torts 564A, Comment b (American Law Institute 1977);

- That as Judge Easterbrook observed in *Stevens v. Tillman*, accusations of "racism" are no longer obviously and naturally harmful, having been "watered down by overuse" and "hurled about indiscriminately" for so many years; and

- That Plaintiffs have not pleaded any actual instances of damage to their professional reputations and legal practices resulting from the publication of Rabbi Pesner's opinion piece.[5]

## The Cases Cited By Plaintiffs Are Neither Contrary Authority Nor On Point To Defendants' Arguments

Defendants dispute that *Taylor v. Carmouche*, 214 F.3d 788 (7th Cir. 2000), is contrary authority in this action. *Taylor* involved two employees who brought an action under 42 U.S.C. §1983 against their employer alleging retaliation for speech about

---

[5] Plaintiffs acknowledge that their Complaint is "unique," does not "fit neatly inside any experiential box," and is something of a "man bites dog" story (Memo. Opp. at 3). But they also describe their supposed group libel cause of action as a "paradigmatic form transported from the legal ether to Earth and this Court" (Memo. Opp. at 14).

matters the employees considered to be public concern. *Id.* at 790. That case considered whether employees calling their supervisor "racist" in the form of a workplace grievance was protected under the Constitution. *Id.* at 793. Judge Easterbrook distinguished that case from *Gertz v. Robert Welch, Inc.* and from his earlier opinion in *Stevens v. Tillman,* because the employees in *Taylor* asserted that their supervisor was "a racist" as a proposition of fact, not a matter of opinion. *Id.* At 793, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Stevens v. Tillman*, 855 F.2d 394, 398-402 (7th Cir.1988). Judge Easterbrook limited his opinion in *Taylor* to an employment context, evaluating what types of adverse action a supervisor may take against an employee. *Id.* at 792-93. The opinion did not discuss the elements of a defamation cause of action and is therefore not on point to any issue in this action, much less directly adverse to *Stevens v. Tillman.* Judge William's dissent also pointed out that the discussion of defamation in *Taylor* was merely dicta: "In fact, as this case is plainly governed by the law regarding employee speech, there is no need to discuss the law of defamation at all." *Id.* at 795.

Seven years after *Taylor*, Judge Manning of this District Court still read *Stevens v. Tillman* to mean just what Defendants say it means:

> The Seventh Circuit has held that under Illinois law, statements of opinion that someone is racist "fit comfortably within the immunity for name-calling" unless they imply the existence of undisclosed, defamatory facts. *Stevens v. Tillman*, 855 F.2d 394, 401-02 (7th Cir.1988). Here, Mr. Martin's defamation claim rests squarely on the defendants' description of him as a racist. As a matter of law, this statement is an opinion and thus is not actionable. *See id.* (allegedly defamatory statements by black parents in their campaign to remove white principal of elementary school, including claims that principal was a "racist," that principal "ran the school like a plantation," and that principal was "miseducating" the children, were insulated from reach of libel law by the First Amendment because they were statements of opinion, not fact).

*Martin v. Brock*, 2007 WL 2122184, at 3  (N.D. Ill. July 19, 2007). In support of that

conclusion, Judge Manning noted that under Illinois law:

> [I]f it is plain that the speaker is expressing a subjective view, an
> interpretation, a theory, conjecture, or surmise, rather than claiming to be
> in possession of objectively verifiable facts, the statement is not
> actionable." *Haynes v. Alfred A. Knopp,* 8 F.3d 1222, 1227 (7th Cir.1993).
> Whether a statement is a factual assertion (and thus is actionable if false),
> or is protected opinion is a question of law for the court. *See, e.g.,*
> *Dilworthy v. Dudley,* 75 F.3d 307, 309 (7th Cir.1996).

*Id.*

*Jones v. Heartland Employment Services, LLC,* 721 F. App'x 547 (7th Cir. 2018),

likewise does not apply to Defendants' arguments in this action. Designated on its face

a "Non-Precedential Opinion," *Jones*, like *Taylor*, involved only a supervisor's allegedly

discriminatory actions against an employee and a workplace grievance that specifically

named the plaintiff. *Id.* at 548.

Each of these cases is distinguishable from *Stevens v. Tillman* and not directly

on point to Defendants' arguments on their motion to dismiss. Only Judge Easterbrook's

opinion in *Stevens* includes an analysis whether allegedly defamatory statements

should be considered opinions or facts. 855 F.2d at 398-402. Furthermore, neither

*Taylor* nor *Jones* is directly adverse to Defendants' position on this motion to dismiss,

since the allegedly defamatory statements alleged in Plaintiffs' Complaint were made in

a newspaper opinion editorial, not in an employment context alleging a supervisor had

retaliated against an employee for speech.

Illinois courts have cited and applied Judge Easterbrook's analysis in *Stevens*

without any reference to *Taylor*. In *Grutzmacher v. Chicago Sun-Times, Inc***.,** 1194 WL

742257, 22 Media L. Rep. 2397 (Circuit Court of Cook County, Illinois, Case No. 91 L

06561, Memorandum Opinion on Defendants' Motion for Summary Judgment, Sept. 28, 1994), the plaintiff alleged that he was libeled by a Chicago Sun Times newspaper columnist in a column that called him a "Neo-Nazi." Circuit Judge Kathy Flanagan, in granting summary judgment for the newspaper and its columnist Steve Neal, observed:

> In *Stevens v. Tillman,* 855 F.2d 394, (7th Cir.1988), Stevens sued Tillman for defamation for calling her a "racist". The court held that accusations of "racism" no longer are obviously and naturally harmful. The word has been watered down by overuse . . . Similar reasoning can be applied in this case.

Judge Flanagan also went on to address the question of whether a statement that someone was a "Neo-Nazi" was a statement of fact or was "protected opinion:"

> Defendants argue that Summary Judgment could also be granted because Neal's statement was pure opinion. The court agrees. In determining whether a statement is one of fact or opinion, a court should consider the totality of the circumstances, and whether a statement can be objectively verified as true or false (*Piersall v. SportsVision of Chicago,* 230 Ill.App.3d 503, 510, 595 N.E.2d 103 [1992]). A statement of fact usually concerns the Plaintiff's conduct or character (*Mittleman* [*v. Witous,* 135 Ill.2d 220 (1990), *abrogated on other grounds* by *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill.2d 16, 619 N.E.2d 129 (1993)] *supra,* 135 Ill.2d at 241). The court may additionally consider whether the statement "has a precise core of meaning for which a consensus of understanding exists, or conversely, whether the statement is indefinite and ambiguous," whether the "literary context of the statement would influence the average reader's readiness to infer that a particular statement has factual content," and whether the "broader social context or setting in which the statement appears signals a usage as either fact or opinion" (*Mittleman,* 135 Ill.2d at 243). . . .

> Illinois has adopted the totality of the circumstances analysis to serve as a guideline in making the determination of whether a statement is opinion or fact. Given the totality of the circumstances in this case, the court feels the use of the term "Neo-Nazi" in the Neal Column was an opinion. . . .

*Id.* at 4.

Judge Flanagan particularly noted in support of her conclusion that the alleged libel of the plaintiff was a protected opinion the location where it was published in the newspaper:

> In addition, the article in which the allegedly defamatory statement appeared was in the editorial section of the newspaper. This is traditionally a forum for the expression of opinion. Mr. Neal has a regularly published column in the editorial section, and is known for his commentaries and opinions. Viewed in its entirety and context, reasonable readers are likely to view a column in this section as strictly the opinion of the writer.

*Id.* at 5. *See also*, *Solaia Technologies, LLC v. Specialty Publishing Co.*, 221 Ill.2d 558, 580-82, 852 N.E.2d 825, 839-40 (2006).

This Court has also addressed the same fact-versus-opinion dichotomy in *Black v. Wrigley*, *supra* at 6-8: "[T]he question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Wynne v. Loyola University of Chicago*, 318 Ill.App.3d 443, 452, 741 N.E.2d 669, 676 (2000). Rabbi Pesner's broadly generalized opinions about the "racism" of white American Jews and their "white privilege" are nonactionable because they do not contain any "objectively verifiable assertion." *Id.*; *see also Huon v. Mudge*, 597 F. App'x 868, 877 (7th Cir. 2015). Read in full, readers of the editorial would be "unlikely to construe the statement[s] as insinuating the existence of additional, undisclosed facts." *Hadley* v. *Doe*, 2014 IL App (2d) 130489, ¶ 48, 12 N.E.3d at 91.

Plaintiffs nevertheless maintain that those statements are not mere expressions of opinion because Rabbi Pesner insinuates that he bases his opinions on other undisclosed facts (Memo. Opp. at 8). But the argument that Defendant Pesner implied the existence of private facts on which he based his opinions is wholly conclusory.

Plaintiffs do not allege any facts indicating how Defendant Pesner intimated that his opinions were based on private facts or what additional facts he might be implying. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting elements of [a] claim are not entitled to [the usual] presumption of truth" in deciding a motion to dismiss).

<u>Plaintiffs Mis-State Defendants' Arguments About Rabbi Pesner's Statements</u>

Plaintiffs' Memorandum in Opposition is simply wrong in asserting (at 5, in fn. 2, and at 6) that "Defendants' position is that the term 'racist' is *ipso facto* non-defamatory" and that "the noun 'racist' cannot be deemed a 'false' statement as a matter of law."[6] To the contrary, Defendants acknowledge, as did Judge Easterbrook in *Stevens v. Tillman*, that there are several possible meanings of the word "racist" -- which is one of the reasons why Rabbi Pesner's statements are constitutionally protected <u>opinions</u> under Illinois defamation law; namely, because the words "racist," "racism" and "white privilege" do not have any "precise and readily understood meaning" that is "verifiable" (*Solaia, supra)*; rather, these words lack "a precise core of meaning for which a consensus of understanding exists;" and they are instead "indefinite and ambiguous" (*Grutzmacher, supra*).

Contrary to Plaintiffs' mischaracterization of Defendants' arguments (Memo. Opp. at 7 and 8), Defendants <u>do</u> in fact dispute that as used by Rabbi Pesner, the words

---

[6] Plaintiffs' repeated, deliberate misstatement of Defendants' arguments is apparently necessary in order to make Taylor v. Carmouche and Jones v. Heartland Employment Services seem more "directly adverse" for purposes of Rule 3.3(a)(2)'s duty to disclose contrary authority "directly adverse to the position of the client." But those decisions are only apparently adverse to a position that Defendants do not actually take in support of their motion to dismiss.

"racism," "racist" and "white privilege" have a "precise and readily understood meaning." Defendants likewise <u>do</u> dispute that these statements are in any way "verifiable."

Another reason that Rabbi Pesner's challenged terms are nonactionable opinions is that the "literary context" in which the words were used, that is, the "setting in which the statement[s] appea[r]," "signaling a usage as either fact or opinion," is in an opinion editorial published on the editorial page of the *Chicago Tribune* under the banner "Perspective," and since reprinted in online editions of the *Tribune* under the headline "Commentary," and on the UJR web pages under the label "Op-Ed." In that context, no reasonable reader could have regarded these statements as a factual assertions rather than opinions.[7]

### Plaintiffs Have Not Alleged Reputational Damage

On the issue of their individual reputational damage, Plaintiffs' attempt to equate what they label their "private obloquy" (Memo. Opp. at 15) from being among the millions of unnamed white Jewish Americans referred to in Rabbi Pesner's op-ed, with the "tragic travails" of Chicago attorney Harry O'Kane (Memo. Opp. at 11-13; Exhibit D to Memo. Opp.) But "private obloquy" is a contradiction in terms, since obloquy is by definition public disgrace, and Plaintiffs have not alleged in their Complaint any instance of actual reputational damage, private or public, that they have suffered. There is simply no equivalence between Plaintiffs Stang and Cohn, unnamed members of a group of more than 3.7 million persons, and Harry O'Kane, who was specifically by name falsely

---

[7] One apparently objective reporter, writing about the filing of Plaintiffs' complaint in the Chicago Daily Law Bulletin, accurately describes Defendant Pesner's writing as "an opinion piece," uses the headline "Rabbi's Op-Ed," and refers to four times by that shorthand term for an opinion editorial (Defendants' Memo., Exhibit D).

accused of being a racist in a genuine "glare of publicity" by multiple news sources

citing to a specific factual incident. *Id.*

Plaintiffs' Reliance on Beauharnais Is Misplaced

What Judge Decker of this District Court wrote in *Collin v. Smith*, 447 F. Supp.

676, 694-96 (N.D. Ill. 1978), is particularly apposite to Plaintiffs' citation to *Beauharnais*,

the sole legal support argued for their group libel cause of action[8]:

> [I]t is widely believed by First Amendment scholars that the case is no longer good law. The decision was originally accompanied by four powerful dissents. The dissenters ranged from Mr. Justice Black, who considered the statute unconstitutional on its face, to Mr. Justice Jackson, who objected only to the conduct of the trial; but all agreed on two points: that the government can constitutionally punish those who defame individual reputations or who incite breaches of the peace, and that Beauharnais had been punished for doing neither, but only for expressing his opinion. The case has since proven remarkably sterile as a source of constitutional law. So far as this court's researches have revealed it has never been relied on as controlling precedent in any Supreme Court case, and at least two circuit courts have stated in dicta that it is doubtful that the case is still good law. *Tollett v. United States*, 485 F.2d 1087, 1094 n. 14 (8th Cir. 1973); *Anti-Defamation League of B'nai B'rith v. FCC,* 131 U.S.App. D.C. 146, 403 F.2d 169, 174 n.5 (D.C.Cir. 1968), cert. denied, 394 U.S. 930, 89 S. Ct. 1190, 22 L. Ed. 2d 459 (1969) (Wright, J., concurring); *see also* T.Emerson,The System of Freedom of Expression at 396 (1970).

> Nevertheless, the case has never been expressly overruled, and this court must make its own determination as to its continued validity. . . . [I]t must be determined whether the *Beauharnais* statute itself would pass muster if it were brought before the Supreme Court today.

---

[8] Plaintiffs' accusation that Defendants' counsel "disregarded their Rule 3.3(a)(2) duty to present directly adverse case law" by failing to disclose the *Beauharnais* decision to this Court is belied by their acknowledgement that the decision is discussed by name and in substance in Exhibit D to Defendants' Memorandum. In that *Chicago Daily Law Bulletin* article, reporter Mark Karlinsky pointed out that the 1952 Supreme Court decision "was still on the books, but it was issued 12 years before the high court narrowed what it considered libel in the landmark 1964 *New York Times Co. v. Sulliva*n decision." And, as noted previously, the duty to disclose directly adverse case law is limited to "legal authority in the controlling jurisdiction." (Emphasis added.) *Beauharnais* is decidedly no longer authoritative in the Seventh Circuit. *See, e.g., Nuxoll v. Indian Prairie School District No. 204*, 523 F. 2d 668, 672 (7th Cir. 2008).

12

*Beauharnais* held that speech which defames racial groups may be criminally punished even when it is not directed at any specific member of the defamed group. There are two possible rationales for this holding. First, it may be presumed that defamation directed at a group damages the reputation of individual members of the group. Second, speech which defames a race or religion may be considered so inherently productive of violence that it is unnecessary to show that it is used in a personally provocative manner.

The first rationale supports defendants' argument that the Skokie ordinance should be upheld because speech which incites racial hatred inflicts psychological trauma on individual members of the victim race. The court will assume for the sake of this discussion that this psychological trauma is a harm sufficiently serious to consider the speech which inflicts it to be unprotected. Nevertheless, the court finds that this interpretation of *Beauharnais* is no longer tenable.

Beginning with *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), the Court has systematically restricted the power of the states to protect individual reputations through libel laws. In doing so, the Court has abolished several of the old common law rules of libel law on the grounds that the danger posed to free speech outweighs the states' need for such rules in order to protect the reputation of their citizens. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-50, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). The Court has abolished the rule that truth is a defense only when published with good motives and to a justifiable end. Truth is now an absolute defense to a libel suit, even when published for malicious purposes. The rule that a publisher is absolutely liable for the defamatory content of the matter published has also been abolished; a defamation plaintiff must now show that the publisher was at least negligent in failing to discover that the publication was false. And finally, the Court has abolished the common law rule that if a publication is found by the court to be defamatory per se, the plaintiff need not prove that he had been damaged. The Court was held that damages must always be proven, and further has banned the award of punitive damages in civil actions.

In the opinion of this court, the *Beauharnais* statute would now be considered unacceptable as a means of protecting reputations. . . .

This conclusion is strengthened by the treatment *Beauharnais* has received in subsequent Supreme Court cases dealing with defamation.

In *New York Times*, the Court referred briefly to the *Beauharnais* statute as one which punished speech both defamatory and likely to cause

13

violence. 376 U.S. at 268, 84 S. Ct. 710. . . . <u>There can be no question that races and religions have been and are the subject of legitimate debate, and the Court's reasoning casts considerable doubt on the propriety of presuming damage to individual members of a group from criticism of the group.</u> All the *Beauharnais* dissenters noted the parallels between that case and seditious libel prosecutions. See also *Anti-Defamation League v. FCC*, supra, 131 U.S.App.D.C. at 150-151, 403 F.2d at 173-74 (Wright, J., concurring). . . .

<u>Punishment for racial slurs directed at large groups poses even greater threats to free speech than punishment for group libel. Libel is a well understood legal concept, with a carefully defined and limited meaning. It consists of false speech which damages a person's reputation. Racial slurs are not so well defined, at least at this stage of development of the law,</u> and the psychological trauma which they may cause is much more difficult to identify and prove than damage to reputation. It is particularly difficult to distinguish a person who suffers actua[l] psychological trauma from one who is only highly offended, and <u>the Court has made it clear that speech may not be punished merely because it offends</u>.

<u>In summary, the court concludes that insofar as *Beauharnais* held that speech which defames racial and religious groups may be restricted in order to protect the reputation of individual members of such groups, it has been overruled, . . . </u>" (Emphasis added.)

The Seventh Circuit Court of Appeals affirmed and endorsed that rejection of

*Beauharnais*:

[W]e agree with the district court that decisions in the quarter-century since *Beauharnais* have abrogated the *Chaplinsky* dictum, made one of the premises of *Beauharnais*, that the punishment of libel "has never been thought to raise any Constitutional problem." *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *Garrison v. Louisiana*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 135 (1964) (criminal libel); and *Gertz v. Robert Welch, Inc.*, *supra*, are indisputable evidence that libel does indeed now raise serious and knotty First Amendment problems, sufficient as a matter of constitutional law to require the substantial rewriting of both criminal and civil state libel laws.

<u>The Eighth Circuit</u>, *Tollett v. United States*, 485 F.2d 1087, 1094 n. 14 (8th Cir. 1973), <u>and Judge Wright of the District of Columbia Circuit</u>, *Anti-Defamation League of B'nai B'rith v. Federal Communications Commission*, 131 U.S.App.D.C. 146, 403 F.2d 169, 174 n. 5 (1968) (concurring opinion), Cert. denied, 394 U.S. 930, 89 S. Ct. 1190, 22 L. Ed.

14

2d 459 (1969), <u>have expressed doubt, which we share, that *Beauharnais* remains good law at all after the constitutional libel cases.</u>

*Collin v. Smith*, 578 F.2d 1197, 1205 (7th Cir. 1978) (Emphasis added.)

More recent decisions of the Seventh Circuit have also rejected *Beauharnais. See, e.g., Nuxoll v. Indian Prairie School District # 204*, 523 F.3d 668, 672 (7th Cir. 2008) ("Anyway, though *Beauharnais v. Illinois*, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952), has never been overruled, <u>no one thinks the First Amendment would today be interpreted to allow group defamation to be prohibited</u>.") (Emphasis added); citing *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 331 n.3 (7th Cir.1985), aff'd without opinion, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986).

Plaintiffs, ignoring the consistent rejection of *Beauharnais* by jurists in reported court decisions as providing any basis for a civil cause of action for group libel, cite no case law in support of their bald assertion that "*Beauharnais* is still good law" (Memo. Opp. at 14). Instead, Plaintiffs cite only an opinion article in *Atlantic* magazine, in which the author, a history professor, expresses regret that the *Beauharnais* decision was "abandoned by earlier generations of Jewish lawyers" as "one by one, in the 1960s, all the Jewish civil-rights organizations formally renounced their support for group libel as a legal strategy . . ." *Id.*

Plaintiffs' description of *Beauharnais* "as a constitutional King Kong" (Memo. Opp. at 13) is therefore only apposite in the sense that, like that great ape in the 1933 classic film, it has been mortally wounded and fallen to its death from the Empire State Building of Constitutional jurisprudence, the United States Supreme Court. Plaintiffs' suggestion that the high court would use this action to revive that 68-year old corpse (Memo. Opp. at 15) is colossal hubris.

15

Plaintiffs' argument that since under *Beauharnais* Rabbi Pesner's opinions could be the subject of a criminal prosecution without offense to the First Amendment, they could surely be the basis of a civil cause of action for group libel (Memo. Opp. at 14), is just another example of fallacious argument, including reasoning from a demonstrably false premise.

<u>Conclusion</u>

The allegations of Plaintiffs' Complaint do not amount to any actionable claim of libel satisfying the Illinois elements of that tort cause of action. The terms "racist," "racism" and "white privilege" as used by Rabbi Pesner in his editorial are not factual, but only his opinions, and as such they are protected under the First Amendment and nonactionable. Those statements are also not "of and concerning" the Plaintiffs, who are unnamed members of a group of "white American Jews" numbering more than 3.7 million. Plaintiffs' Complaint does not allege any reputational damage to them from Rabbi Pesner's statements other than in wholly conclusory terms.

For those reasons, Plaintiffs fail to state any libel cause of action against Defendants, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure this Court should dismiss Plaintiffs' Complaint with prejudice and award Defendants their costs of this action.

Dated: May 11, 2020

UNION FOR REFORM JUDAISM, JONAH DOV PESNER, and RICHARD "RICK" JACOBS

By: ___s/Mitchell H. Frazen_____
      Mitchell H. Frazen
      LITCHFIELD CAVO LLP
      Their Attorneys

Mitchell H. Frazen
LITCHFIELD CAVO LLP
303 West Madison, Suite 300
Chicago, Illinois 60606
312.781.6618
Frazen@LitchfieldCavo.com
A.R.D.C No. 3127118