IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK A. STANG and STUART COHN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No. 20 C 757 ) |
| UNION FOR REFORM JUDAISM, JONAH DOV PESNER, and RICHARD JACOBS, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Mark Stang and Stuart Cohn sued the Union for Reform Judaism (URJ), Jonah Dov Pesner, and Richard Jacobs for defamation under Illinois law. The defendants have moved to dismiss. For the reasons stated below, the Court grants the defendants' motion to dismiss and directs the Clerk to enter judgment in favor of the defendants.

### Background

The Court takes the following facts from the complaint, documents attached to it, and documents referenced in it and attached to the motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The URJ is a nonprofit connected to the Reform denomination of Judaism in North America. Jacobs is the URJ's president, and Pesner is its senior vice president.

In December 2019, the *Chicago Tribune* published a piece written by Pesner

under the heading "As Reform Jews, we must consider reparations for American slavery."  Defs.' Mot. to Dismiss, Ex. A.  The *Tribune* published the piece in a section of its print edition called "Perspective," *id.*, and on its website with the label "Commentary" preceding the heading, *id.*, Ex. B at 1.

In the piece, Pesner wrote that "it's time for the Reform movement" of Judaism in the United States to "join" the "conversation" about "our nation's bigoted history and [ ] how to dismantle the racist systems and structures that persist to this day."  *E.g.*, *id.*  He wrote:

> Our Jewish community is tremendously diverse . . . but many of us have white Jewish grandparents who arrived in the United States in the early 1900s with very little. . . . [W]e can now understand that they and many of us also benefited from, and continue to benefit from, the same white privilege that allows for the continued discrimination against black Americans.  From how we gained entry into this country to the places we were allowed to live and work, to access to education and financial capital, white Jews have reaped the rewards of racism.

*Id.* at 3.

Pesner also wrote that, at the URJ's biennial conference, which was taking place in Chicago that week, the URJ would "consider a resolution that would make it our policy to support the exploration of reparations for American slavery."  *Id.* at 2.  The resolution, he wrote, "does not define what form reparations ought to take" but rather "endorses" studies and proposals about reparations to "transform" knowledge "into action against the racism still lingering in our congregations and communities."  *Id.* at 3.  The final paragraph of Pesner's piece read:  "The URJ's resolution is about confronting racism in our country, our synagogues, and our hearts.  We cannot expect to be a spiritually renewed community—or country—without the airing of truths and a coming to terms with our past sins and silence."  *Id.* at 4.

2

A couple of days after the *Chicago Tribune* published the piece, the URJ published an excerpt of it on its website. It allegedly remains posted there.

The plaintiffs are both lawyers who identify as Jewish and American. On February 2, 2020, they filed this lawsuit. They allege that Pesner defamed "American Jews, including by imputation the Plaintiffs" by calling them "'racists' who are purportedly bigoted against African Americans" in their "'hearts,' 'communities,' 'congregations,' and 'synagogues.'" Compl. ¶ 1 (quoting Pesner's article). In addition, they allege that Pesner defamed Jewish people in America by calling them, among other things, "knowing and willing recipients of numerous benefits of 'white privilege'" who allegedly "'reaped the rewards of racism' . . . to the purported severe and lasting detriment of African-Americans.'" *Id.* (same). The plaintiffs also seem to assert that Jacobs and URJ defamed them by publishing Pesner's statements and, with regard to URJ, through the doctrine of *respondeat superior*.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court "accept[s] well-pleaded facts as true and draw[s] all reasonable inferences in the plaintiffs' favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To a state a claim for defamation under Illinois law, which the parties agree

governs this case, a plaintiff must allege "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). A defamatory statement is one that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.*

The plaintiffs contend that they have asserted a claim for defamation *per se*. "If a statement's harm is "obvious and apparent on its face," it is defamatory *per se. Id.* In Illinois, only five categories of statements are considered defamatory per se. *Id.* at 491–92, 917 N.E.2d at 459 (listing categories). Even if a statement falls into one of those categories, however, it is actionable only if it cannot "reasonably be interpreted as referring to someone other than the plaintiff[s].'" *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 503, 866 N.E.2d 114, 122 (2006)). This is "a difficult standard to meet." *Id.*

In his article, Pesner did not mention any individual by name. Instead, he referred generally to the "Jewish community," Defs.' Mot. to Dismiss, Ex. B at 3, and "the Reform movement" of Judaism, *id.* at 1. These statements cannot be taken as referring to the plaintiffs as individuals. If anything, it would be unreasonable to interpret Pesner's statements as referring specifically to Stang or Cohn. Thus the allegedly defamatory statements can reasonably be interpreted as referring to someone other than the plaintiffs, and the plaintiffs have not stated an actionable defamation claim.

The plaintiffs concede that they were not identified by name in Pesner's article, but they contend that they nonetheless have standing to bring this case. That misses

the mark. Whether a statement reasonably can be interpreted as referring to someone other than the plaintiffs is not an issue of standing; it goes to the question of whether the plaintiff has stated a claim or can prove the claim on the merits.[1] *See, e.g., Muzikowski*, 477 F.3d at 904. As just discussed, the plaintiffs have not stated a viable claim.

The plaintiffs, however, assert that the allegedly defamatory statements can be "imputed from the libeled group" to them as individual members of that group. Pls.' Resp. Br. at 1; *see also* Compl. ¶ 10 (mentioning "group libel against an identifiable racial, ethnic, or religious group" that is "necessarily imputed to each of the group's members"); *id.* ¶ 66 (referring to Pesner's alleged defamation as "group libel of American Jews"). But the plaintiffs do not explain why they can bring their defamation claim on that ground or cite any case law suggesting that they can do so. To be sure, as the defendants point out, at least one Illinois appellate court has found that a defendant may be liable to an individual member of a defamed group. *Missner v. Clifford*, 393 Ill. App. 3d 751, 768, 914 N.E.2d 540, 556 (2009). The court in *Missner* stated, however, that a plaintiff can bring an individual claim concerning the defamation of a group "when the defamed group is sufficiently small and the words may reasonably be understood to have personal reference and application to any member of the group." *Missner*, 393 Ill. App. 3d at 768, 914 N.E.2d at 556 (citing Restatement (Second) of Torts § 564A, Comment b, at 168 (1977)). The Court need not predict whether the Illinois Supreme Court would find a claim of so-called group defamation or libel actionable. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 807

---

[1] Accordingly, the plaintiffs' request for thirty days to amend their complaint to cure any lack of standing is misplaced, and the Court disregards it.

5

(7th Cir. 2018) (role of a federal court applying state law is to predict how the state's supreme court likely would resolve an issue). Even if it were actionable, plaintiffs do not have a sufficient basis for such a claim. This is because the plaintiffs do not contend, nor could they, that the allegedly defamed group—all Jewish people in America—is sufficiently small that Pesner's words reasonably could be understood to personally refer and apply to the plaintiffs and thus enable them to sue for defamation.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss [dkt. no. 7]. The Court also grants the motion by attorney Farva Jafri to withdraw as attorney for plaintiffs [dkt. no. 19]. Because the defects in plaintiffs' claims cannot be cured by amendment, the Court directs the Clerk to enter judgment in favor of the defendants and against the plaintiffs. *See, e.g., Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 18, 2020